# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

FEDERAL DEPOSIT INSURANCE )
CORPORATION, )
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　Plaintiff, 　　　　　)　　Case No. 2:11-cv-01283-GMN-PAL
　　　　　　　　　　　　　　　　　　　　　　)
vs. 　　　　　　　　　　　　　　　　　　　　) 　　　　　　　　　**ORDER**
　　　　　　　　　　　　　　　　　　　　　　)
RED HOT CORNER, LLC, et al., 　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　Defendants. 　　　　)
_____ )

  This matter is before the court on the parties' dispute which was submitted to the court in a Joint Status Report (Dkt. #69), Supplement (Dkt. #76), Plaintiff's Supplement to Joint Status Report (Dkt. #80), Plaintiff's Amended Supplement to Joint Status Report (Dkt. #81), and Defendants' Response (Dkt. #81).

  On December 18, 2012, the court approved the parties' Stipulation (Dkt. #82) to stay discovery to allow the Federal Deposit Insurance Company ("FDIC") to receive certain financial information from all Defendants, and for the parties to conduct a mandatory settlement conference with the Honorable Robert A. McQuaid, Jr. The settlement conference was scheduled and continued at the parties' request, and took place on February 26, 2013. No settlement was reached.

  The court set the matter for a scheduling conference on March 12, 2013. At the scheduling conference, the court indicated this case was no longer stayed and inquired whether the parties still needed a resolution of the discovery disputes discussed at the October 30, 2012, status conference. Counsel indicated that their discovery disputes required the court's intervention.

## BACKGROUND

  The Complaint (Dkt. #1) in this case was filed August 9, 2011. It is an action filed by the FDIC, as receiver for Irwin Union Bank & Trust Company ("IUBT") against Red Hot Corner, LLC ("Red

Hot"), and various individuals and trusts.  The FDIC was appointed as receiver for IUBT on September 19, 2009, after the Indiana Department of Financial Institutions closed the bank.  Complaint, ¶1.  Pursuant to statute, the FDIC is charged with winding up the affairs of IUBT and by operation of law, succeeds to all rights, titles, powers and privileges of the bank, and to pursue claims in its capacity as receiver.  *Id*., ¶4.  Red Hot is a Nevada limited liability corporation with its principle place of business in Las Vegas, Nevada.  *Id*., ¶5.  On January 6, 2006, IUBT extended a loan to Red Hot in the principal amount of $4,445,250, evidenced by a loan agreement and promissory note.  *Id*., ¶18.  The loan was due in full January 6, 2008.  *Id*.

The loan was secured by twenty-one separate deeds of trusts for pieces of real property in Las Vegas, Nevada.  *Id*., ¶19.  The individual Defendants and trusts personally guaranteed repayment of the loan.  *Id*., ¶20.  The loan was extended an additional year and fell due January 4, 2009.  *Id*., ¶24.  The guarantees applied to the extended term of the loan.  *Id*.  On January 4, 2009, Red Hot failed to pay the loan amount due.  *Id*., ¶25.  On October 21, 2010, sixteen of the parcels securing the loan were sold by a trustee's deed.  *Id.,* ¶27.  The sixteen parcels sold for $1,019,373.33.  *Id*., ¶28.  On February 10, 2011, the remaining five parcels were sold by a trustee's sale for a total of $332,126.66.  *Id*., ¶¶29-30.  At the time of the trustee's sale, the total indebtedness under the loan was $5,087,063.84 exclusive of attorney's fees and costs, with interest and late fee penalties continuing to accrue.  *Id*., ¶31.

The FDIC has asserted claims for: (1) deficiency against Red Hot and its guarantors; (2) breach of contract against the guarantors; and (3) unjust enrichment against the guarantors.

## DISCUSSION

**A.     The Disputed Interrogatories.**

The parties' discovery disputes involve the FDIC's responses to Red Hot's Interrogatory Nos. 4, 5, 14, 16, and 17.  The parties met and conferred in an attempt to resolve their discovery disputes without the court's intervention.  The FDIC agreed to supplement its responses and served amended responses to the first set of interrogatories and first request for production of documents.  However, Red Hot maintains that the responses and supplemental or amended responses are still inadequate and seeks an order compelling further answers and responses.

/ / /

1  Red Hot argues that the FDIC impermissibly asserted an objection to Interrogatories Nos. 4, 5,
2  14, 16 and 17, that the interrogatory "seeks information that is equally available to the Defendants and
3  is therefore oppressive and burdensome." Counsel for Red Hot cited several cases to the FDIC during
4  the meet and confer process that have held that use of this objection is insufficient to prevent an answer
5  to an interrogatory. However, the FDIC's amended responses contained the same objection. Red Hot
6  seeks to strike the objection.

7  The FDIC's Supplement to Joint Status Report (Dkt. #76) asserts that its objections to
8  Interrogatories Nos. 4, 5, 14, 16 and 17 are valid without citation to any authority or articulated
9  reasoning. The party resisting discovery has the burden to show that the discovery should not be
10 allowed and has the burden of clarifying, explaining, and supporting its objections. *Blankenship v.*
11 *Hearst Corp.,* 519 F.2d 418, 429 (9th Cir. 1975). Defendants correctly point out that a number of
12 courts have held that this objection is insufficient to resist a discovery request. *National Academy of*
13 *Recording Arts & Science, Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009); *St. Paul*
14 *Reinsurance Co., Ltd., CNA v. Commercial Fin. Corp.,* 198 F.R.D. 508, 517 (N.D. Iowa 2000); *City*
15 *Consumer Servs., Inc. v. Horne,* 100 F.R.D. 740, 747 (D. Utah 1983); *United States v. 58.16 Acres of*
16 *Land*, 66 F.R.D. 570, 573 (E.D. Ill. 1975). The court finds the FDIC has not met its burden of showing
17 these discovery requests are unduly burdensome or oppressive because they purportedly seek
18 information that is equally available to the Defendant. *See, e.g., Bible v. Rio Properties, Inc.*, 246
19 F.R.D. 614, 618 (C.D. Cal. 2010). These general objections do not provide sufficient detail regarding
20 the time, money, and procedures required to produce the requested information and are mere
21 unsupported allegations. The objections are therefore overruled and stricken.

22 Red Hot also seeks an order to compel further responses to answers to Interrogatories Nos. 11
23 and 16. Interrogatory No. 11 asks the FDIC to identify and state the amount of its damages for each
24 category of damages alleged in the complaint. The FDIC responded by referring to its Response to
25 Interrogatory No. 8, and providing the note rate, per diem interest on the note, and default rate and per
26 diem interest on each note. Red Hot argues that providing the daily interest rate calculation does not
27 identify the total amount of damages claimed or comport with the FDIC's Rule 26(a)(1)(A)(iii)
28 obligation to provide an actual calculation of damages. The FDIC amended its Answer to Interrogatory

1  No. 11 to provide the amounts claimed in this deficiency action consisting of the original loan amount, total indebtedness, the note rate, and default rate.  It further supplemented its response to provide the amount of late fees and stated that its attorney's fees and costs continue to accrue and that Plaintiff will provide these amounts when they become final upon resolution of the case.

Red Hot's Supplement (Dkt. #81) argues that the FDIC's late Second Amended Response to Interrogatory No. 11 is representative of the FDIC's failure to participate in the discovery process in good faith.  Red Hot also argues that the second supplemental answer was provided *after* the FDIC represented to the court at an earlier hearing that its earlier response to this interrogatory was sufficient.  However, it appears that Red Hot is now satisfied that the Second Amended Answer to Interrogatory No. 11 provides the calculation of damages required by Rule 26(a)(1)(A)(iii).  The court will therefore not compel the FDIC to provide a further response to Answer to Interrogatory No. 11.

Interrogatory No. 16 asks the FDIC to identify and list every foreclosure sale where IUBT was a beneficiary to a deed of trust scheduled to occur in the State of Nevada that the FDIC delayed, postponed or cancelled upon the FDIC being appointed receiver.  The FDIC originally objected that the information was equally available to the Defendants and therefore oppressive and burdensome.  The FDIC also objected that the interrogatory was not reasonably calculated to lead to the discovery of admissible evidence.  The FDIC's Amended Response to Interrogatory No. 16 interposed additional objections that the request for information on every foreclosure sale during an unspecified period of time was not reasonably calculated to lead to the discovery of admissible evidence.  Red Hot's Supplement (Dkt. #81) argues that the FDIC's new objections and arguments remain inadequate.  The interrogatory seeks information to evaluate whether the FDIC's inactions concerning approval of the loan in dispute in this case were applied across the board to other similarly situated borrowers at the time the FDIC was appointed receiver, or whether the FDIC singled out Red Hot Corner.  These questions and answers are relevant to prosecution of Red Hot Corner's bad faith counterclaims and its affirmative defenses.

The FDIC's supplemental objections are stricken as untimely.  The court finds the FDIC has not met its burden of showing that this discovery should not be allowed.  The interrogatory is limited in scope to the receivership at issue in this case, and limited to foreclosure sales involving IUBT as a

1  beneficiary to a deed of trust scheduled to occur in the State of Nevada, that was delayed, postponed, or
2  cancelled upon the FDIC being appointed receiver.  The court will therefore compel the FDIC to
3  provide a substantive response to Interrogatory No. 16.

### B. The Disputed Requests for Production.

In Request for Production Nos. 1-4, 7, 9, and 11, Red Hot sought production of certain original documents associated with the loan and security interests involved in this lawsuit.  The FDIC responded that it had provided copies of the requested documents and offered to allow the Defendants to inspect the originals in Overland Park, Kansas.  Red Hot argues that the FDIC was required to produce the original documents, and that the FDIC's offer of inspection thousands of miles away from this jurisdiction is inappropriate.  Red Hot therefore requests an order compelling the FDIC to produce the original documents at its attorney's office in Las Vegas, Nevada.  Red Hot agreed to reimburse the FDIC for reasonable expenses for transporting the originals.  Nevertheless, the FDIC refused to produce them.

The FDIC responds that the Defendants have not provided a "shred of authority" that requires it to produce original documents.  Nevada's Best Evidence Rule, codified at NRS 52.245, allows duplicates to be admitted to the same extent as the originals unless a genuine question is raised as to authenticity of the original, or in circumstances that it would be unfair to admit a duplicate in lieu of the original.  Neither of these circumstances apply here.  Therefore, the FDIC's production of duplicates complies with its discovery obligations.  Defendants' Supplement (Dkt. #81) replies that the FDIC argued  Nevada's Best Evidence Rule for the first time in its Amended Supplement to Joint Status Report.  Red Hot points out that the FDIC has agreed to make the originals available for inspection, and the only dispute is whether the inspection should occur in Overton, Kansas, or in Las Vegas, Nevada.

The Defendants do not claim that there is any dispute concerning whether the duplicates produced by the FDIC in discovery are genuine or authentic.  The Defendants do not claim that they do not have their own copies of these documents.  Under these circumstances, the court will not compel the FDIC to produce the originals of the documents to its counsel's office in Las Vegas, Nevada.

Red Hot also initially sought to compel further responses to Request for Production of Documents Nos. 46 - 49, requesting appraisals of real property prepared before or after the FDIC was

appointed receiver. The FDIC objected on various grounds, but "without waiving" produced responsive documents. The FDIC subsequently served Amended Responses and Second Amended Responses to these requests. The FDIC represents that it has identified or produced all of the appraisals and related documentation requested. However, Red Hot "has no guarantee" that the FDIC has produced all responsive documents and requests that the FDIC provide "some assurance or declaration" that it has disclosed all of the appraisals commissioned before or after the FDIC was appointed receiver. Red Hot requests an assurance in the form of a declaration that the FDIC has conducted a good-faith and diligent search of FDIC and IUBT records. The FDIC responds that it has produced all of the appraisals it is aware of at this time. It attached a spreadsheet of the appraisals it produced as an exhibit to its Supplement to Joint Status Report (Dkt. #76).

The FDIC was obligated to conduct a good-faith and diligent search of its records and the records of IUBT for documents responsive to these requests. Rule 26(g) requires that every discovery response must be signed by an attorney or party. By signing a discovery response "an attorney or party certifies that to the best of the person's knowledge, information and belief formed after reasonable inquiry" the disclosure is complete and correct as of the time it is made. Rule 26(g)(3) mandates an appropriate sanction if a certification violates this rule without substantial justification. Thus, by signing the discovery responses, the FDIC has already certified that to the best of its knowledge, information and belief *formed after a reasonable inquiry*, the disclosures are complete and correct as of the time made. Additionally, Rule 26(e) requires a party who has made a disclosure under Rule 26(a), or responded to written discovery requests, to supplement an incorrect or incomplete response in a timely manner if the party learns that the disclosure or response is incomplete or incorrect in some material respect. The court expects the parties to strictly comply with their obligations under Rule 26(g) and Rule 26(e) and will impose appropriate sanctions for violations of these rules. However, as the FDIC's discovery responses have already been signed under penalty of Rule 26(g), the court will deny the Defendants' request to compel the FDIC to provide a separate declaration that they have conducted a good-faith effort to search for documents responsive to these requests.

Red Hot initially requested an order compelling the FDIC to further respond to Request for Production No. 58, which requested all of the standards, policies and check lists the FDIC used,

followed, or relied upon in dealing with the loan at issue in this case. The FDIC initially objected on various grounds, but without waiving, produced some internet printouts of important banking legislation governing the FDIC. The FDIC subsequently supplemented this response by identifying 800 pages of documents comprising manuals that addressed the failure of banks and the FDIC's resolution procedures for assets. However, the FDIC failed to supplement its Answers to Interrogatories No. 4 and 5, which asks the FDIC to identify these same manuals. Red Hot argues that the FDIC's disclosures of these manuals may be responsive to its request for production of documents, but now make the Second Amended Responses to Interrogatory Nos. 4 and 5 "blatantly deficient." Red Hot therefore asks for an order compelling the FDIC to provide a complete response to Request No. 58, and Interrogatories Nos. 4 and 5 "that actually provides all of the information and documentation demanded by these discovery requests."

The FDIC has now produced 800 pages of documents responsive to Request for Production No. 58. Interrogatories Nos. 4 and 5 request the identification of the documents the FDIC has now produced. The court will compel the FDIC to supplement its Answers to Interrogatory Nos. 4 and 5 to clarify whether it has now identified and produced all of the standards, policies, and check lists the FDIC used, followed, or relied upon in dealing with the loan at issue in this case.

The FDIC also objected to Requests for Production Nos. 51 - 59, on attorney-client and work-product privilege grounds. The FDIC provided a privileged document log as part of its first supplement to its initial disclosures. However, the FDIC has not identified which of the documents on the privilege log it has withheld are responsive to Request Nos. 51 - 59. Red Hot therefore asks that the court compel the FDIC to identify documents withheld on the basis of privilege that are responsive to each request. Finally, Red Hot argues that a number of the documents listed on the privileged document log do not appear, on their face, to be prepared in anticipation of litigation. The FDIC states in its Supplement to Joint Status Report (Dkt. #76) that the documents included in the privilege log "were either subject to attorney-client privilege, and/or irrelevant." Red Hot requests that the court conduct an *in camera* review of the documents listed on the FDIC's privileged document log. The FDIC does not oppose an *in camera* review of the withheld documents, but argues that it has appropriately asserted attorney-client and work-product privileges.

Neither side provided the court with a copy of the privileged document log so that the court could assess the validity of the assertion of privilege. However, to the extent the FDIC listed a document on its privileged log that was "either subject to an attorney-client privilege and/or irrelevant" this is improper. If the document is not responsive to the Defendant's discovery requests, there is no need to list it on a privileged document log. If it is responsive to the Defendants' discovery requests, it must be produced unless genuinely subject to the attorney-client or work-product privilege. The court agrees with counsel for the Defendants that declaring a privilege objection "may or may not exist" is not sufficient to preserve the privilege. The FDIC shall supplement its privileged document log to fully comply with Fed. R. Civ. P. 26(b)(5)(A)(ii), and produce any responsive documents withheld as "irrelevant." The court declines the parties' invitation to conduct an *in camera* review of the documents listed on the FDIC's privileged document log.

**IT IS ORDERED** the Defendants' Request to Compel Further Discovery Responses is **GRANTED in part** and **DENIED in part** as follows:

1. The FDIC's objections to Interrogatory Nos. 4, 5, 14, 16 and 17 that they seek information equally available to the Defendants and are therefore oppressive and burdensome are overruled and stricken;

2. The FDIC's supplemental objections to Answer to Interrogatory No. 16 are stricken as untimely. The FDIC shall have until May 7, 2013, to fully and completely respond to Interrogatory No. 16;

3. The FDIC shall supplement its Answers to Interrogatory Nos. 4 and 5 to identify all of the standards, policies and check lists it used, followed, or relied upon in dealing with the loan in dispute in this case no later than May 7, 2013; and

4. The FDIC shall have until May 7, 2013, in which to produce any documents responsive to Request for Production Nos. 51 - 59 identified on the privileged document log withheld as "irrelevant" and to supplement its privileged document log to fully comply with Rule 26(b)(5)(A)(ii). Failure to comply with the requirements of Rule 26(b)(5)(A)(ii) shall constitute a waiver of any asserted privilege.

/ / /

**IT IS FURTHER ORDERED** that any request for relief not specifically addressed in this order is **DENIED**.

Dated this 23rd day of April, 2013.

_____
Peggy A. Leen
United States Magistrate Judge