# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Federal Deposit Insurance Corp, as Receiver for Irwin Union Bank and Trust Company,<br><br>    Plaintiff,<br><br>v.<br><br>Red Hot Corner, LLC, a Nevada Limited Liability Company, et al.,<br><br>    Defendants. | Case No. 2:11-cv-1283-JAD-PAL<br><br>**Order Granting Plaintiff's Second Motion to Dismiss Counterclaims [Doc. 95] and Denying Motion for Leave to Amend Answer and Counterclaims [Doc. 96]** |

    This is a deficiency action against the borrowers and guarantors of a $4 million-plus loan from Irwin Union Bank & Trust Co., secured by a promissory note, guaranties, and deeds of trust on 21 parcels of real property. The borrowers were in the process of finalizing a deed-in-lieu-of-foreclosure agreement with the bank when it was taken over by the FDIC on September 18, 2009. The FDIC did not finalize the agreement; it canceled the then-scheduled foreclosure sale of the parcels and ultimately did not resume the sales until October 2010 and February 2011.

    The FDIC sued the borrower and the guarantors of the loan in August 2011 claiming that the foreclosure sales resulted in a deficiency of nearly $3.7 million. Doc. 1 at 6–7. Some of those defendants (Red Hot Corner, LLC; Richard M. Tavano; and Joseph Kennedy [hereinafter "Defendants" or "Counterclaimants"]) filed counterclaims for breach of contract, breach of the implied covenant of good faith, and specific performance of the deed-in-lieu agreement, theorizing that the alleged deficiency was caused by the FDIC's refusal to perform the deed-in-lieu agreement and postponement of the foreclosure sale. Doc. 29. Defendants also plead these same theories as

affirmative defenses for *inter alia* failure to mitigate damages, waiver, offset and recoupment, breach of contract, bad faith, and supervening events. Doc. 29 at 11–14.

The FDIC moves to dismiss the counterclaims. Doc. 95. It contends that this Court lacks subject-matter jurisdiction over the counterclaims because the Defendants failed to exhaust the mandatory FDIC-review process under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1811 et seq., before asserting these claims in this forum, depriving this Court of subject matter jurisdiction. Doc. 95. Defendants contend that their claims are not subject to FIRREA exhaustion because (1) they accrued after the FDIC's deadline for filing such claims, (2) their failure to receive a notice of the claims-bar date relieved them of any exhaustion requirement, and (3) their claims only arise as a result of the litigation filed against the Defendants by the FDIC. Doc. 97. Defendants also ask the Court for leave to assert additional counterclaims. Docs. 96; 96-1.

The Court heard extensive oral argument on these motions on November 15, 2013, and directed supplemental briefing on the application of *Resolution Trust Corp. v. Titan Fin. Corp.*, 22 F.3d 923 (9th Cir. 1994), to the issues raised by the motion to dismiss and opposition to the motion for leave. Having received and considered the supplemental briefing and all other briefs and oral argument, and with good cause appearing, the Court now GRANTS the motion to dismiss [Doc. 95] and DENIES the motion for leave [Doc. 96] based upon the reasons set forth below.

**Discussion**

**A.  The Court Lacks Jurisdiction Over the Counterclaims Because Defendants Failed to Satisfy FIRREA's Exhaustion Requirement.**

No court has jurisdiction over claims that are subject to, but have not been exhausted by, the mandatory administrative-claims process outlined in FIRREA. *See Henderson v. Bank of New England,* 986 F.2d 319, 320–21 (9th Cir. 1993) (no jurisdiction if claimant fails to exhaust FIRREA's administrative process; 12 U.S.C. § 1821(d)(13)(D) strips all courts of jurisdiction over claims made outside of § 1821's administrative procedures). "FIRREA's exhaustion requirement applies to bank debtors as well as creditors, and to claims that arise out of acts by the receiver as well as by the failed institution," *McCarthy v. F.D.I.C.*, 348 F.3d 1075, 1076 (9th Cir. 2003), and to both

claims and counterclaims. *Resolution Trust Corp. v. Midwest Fed. Sav. Bank of Minot*, 36 F.3d 785, 791 (9th Cir. 1993). In sum, it "applies to *any* claim or action respecting the assets of a failed institution for which the FDIC is receiver." *McCarthy*, 348 F.3d at 1081 (emphasis in original).

It is undisputed that Defendants did not exhaust the FIRREA claims process before asserting their counterclaims in response to the FDIC's deficiency action. They contend rather that their claims are not subject to the exhaustion requirement because: (1) the claims were not "susceptible of resolution" through the FDIC process because they accrued after the FDIC claims-bar date expired; (2) Defendants never received notice of the claims-bar date; and (3) regardless, these claims fall within the "additional exception" to the FIRREA-exhaustion requirement articulated by the Ninth Circuit's opinion in *Titan Financial*. Doc. 97.

### *1. The Timing of the Claims Did Not Excuse Defendants' Compliance with the Administrative-Review Procedure.*

Defendants contend that their counterclaims were not susceptible of resolution by the FDIC because they arose after the FDIC's December 29, 2009, deadline for filing claims. They accrued, Defendants allege, "when FDIC sued Counterclaimants for the Deficiency Judgment" on August 9, 2011, only "after FDIC improperly cancelled and then delayed the already scheduled foreclosure sale for more than a year thereby causing the value of the Encumbered Property to plummet." Doc. 97 at 11. Because these claims did not exist during the short window for filing claims with the FDIC, Defendants argue, they "were never susceptible for resolution by FDIC's administrative process." *Id.* at 12.

The Ninth Circuit rejected the same contention in *McCarthy v. FDIC*, interpreting § 1821(d)(5)(C)(ii) of the Act to permit late filing by those whose claims do not arise until after the deadline has passed:

> As those courts requiring exhaustion for post-receivership claims have pointed out, the FDIC has interpreted § 1821(d)(5)(C)(ii), which permits claimants who did not receive notice of the receiver's appointment to file after the bar date imposed by FIRREA has passed, also to permit late filing by those whose claims do not arise until after the deadline has passed. In light of this practice (unchallenged here) and the plain language of § 1821(d)(13)(D), we cannot say that McCarthy's post-receivership claims are not susceptible of resolution through the administrative claims procedure solely because they arose

>after the FDIC was appointed receiver. Therefore, we join the majority of courts in holding that claimants such as McCarthy, who challenge conduct by the FDIC as receiver, must exhaust administrative remedies before seeking judicial review.

*McCarthy*, 348 F.3d at 1080–81 (collecting cases that hold that exhaustion requirement applies to post-receivership/post-claims-deadline conduct) (internal citations omitted). This Court similarly cannot say that Defendants' post-receivership claims were not susceptible of resolution through the claims procedure solely because they arose after the claims-bar deadline passed. Thus, the post-claims-bar accrual of these claims did not excuse their submission to the FDIC.

### 2.  *Defendants' Failure to Receive Notice is No Excuse.*

Nor is it a legitimate excuse that Defendants did not receive notice of the claims-bar date. As Defendants have established, receipt of notice of the December 29, 2009, deadline for their later-accruing claims would have been useless. But more importantly, the statute did not obligate the FDIC to provide these counterclaimants with notice of the claims-bar date because its text only requires notice to *creditors*, which these *debtor* defendants/counterclaimants are not. *See McCarthy*, 348 F.3d at 1081. Regardless, the Ninth Circuit has held that "failure to give notice does not render the administrative claims process inapplicable." *Id*. (citing *Intercont'l Travel Mktg. v. FDIC*, 45 F.3d 1278, 1284–85 (9th Cir. 1994)). Accordingly, Defendants' failure to receive notice of the deadline did not relieve them of their FIRREA exhaustion obligation.

### 3.  *Defendants' Counterclaims Do Not Fall Within the Limited <u>Titan Financial</u> Exception*.

Defendants' counterclaims are also not saved by the narrow exhaustion exception carved out by the *Titan Financial* case. In *Titan Financial*, the Ninth Circuit panel held that a prevailing party's post-judgment claim for recovery of attorney's fees was not a "claim" subject to the FIRREA exhaustion requirement. The panel followed the reasoning in *RTC v. Midwest Federal Savings*, 4 F.3d 1490, 1496 (1993), a foreclosure/personal-guaranty enforcement action in which a different Ninth Circuit panel concluded that the defendant-guarantor's counterclaim for reformation was properly an affirmative defense of mutual mistake, and the FIRREA exhaustion requirement does not apply to affirmative defenses. *Titan Fin.*, 22 F.3d at 927. The *Titan Financial* panel credited

*Midwest* for the principle "that a defendant's claim arising out of litigation pursued by the [receiver] is not subject to FIRREA's exhaustion requirements if prior to that litigation the defendant was (1) not a creditor of the RTC or its predecessor-in-interest, and (2) had no independent basis for filing a claim against the RTC or its predecessor-in-interest." *Id*. Applying that principle to the facts, the *Titan Financial* panel concluded that the exhaustion requirement did not apply because "[b]efore he was sued by the RTC, [the defendant-guarantor] was not a creditor of either the failed bank or the RTC as receiver. Nor did he have any independent basis for filing a claim against either the failed bank or the RTC." *Id*. His "claim" arose only by virtue of his status as a prevailing party in the litigation.

The same cannot be said of Defendants' claims in the instant case. A review of the counterclaims (which span 35 pages and consist of 217 paragraphs), *see* Doc. 29, reveals four causes of action—the first of which alleges a breach of the implied covenant of good faith and fair dealing in Defendants' loan documents, and the second through fourth of which allege breaches of the terms and covenants in the never-executed deed-in-lieu of foreclosure agreement that was being negotiated at the time the FDIC took over the bank. Although Defendants allege that the FDIC's bad-faith actions undertaken between September 2009 and October 2010 "were conducted deliberately in order to allow for the knowing deterioration of the value of the Encumbered Property so that FDIC could obtain a windfall in the form of an improper deficiency judgment from Defendants/Counterclaimants at a later date that would not otherwise have existed had FDIC performed its contractual obligations fairly and in good faith," *see* Doc. 29 at ¶¶ 123, 213, they also allege that they "have suffered damages in an amount in excess of Ten Thousand Dollars" and seek "an order for specific performance of the terms and conditions of the Deed in Lieu of Foreclosure Agreement." *Id*. at ¶ 126, 155, 184, 216. Thus, unlike the *Titan Financial* guarantor's post-judgment motion for attorney's fees, Defendants have alleged numerous independent bases for asserting affirmative causes of action against the FDIC.

This dispute is more appropriately governed by *McCarthy*. Like Defendants here, McCarthy filed an "action for damages for the way" the FDIC "handled a loan he was negotiating" with his bank "after the bank failed and the FDIC was appointed as receiver." *McCarthy*, 348 F.3d at 1076.

1  McCarthy sued the FDIC and the bank for breach of fiduciary duty and sought $50,400 in damages,

2  alleging "that this sum should be offset against his loan with [the bank] and that his interest rate

3  should be modified." *Id*.  The district court dismissed his claim for failure to exhaust, and the Ninth

4  Circuit affirmed:

> McCarthy seeks the recovery of $50,400 for breach of fiduciary duty. Even though he asks that the payment be awarded by way of "offset" against the balance due on his loan from [the bank], it is a payment nonetheless.  The payment would diminish [the bank's] assets, as would lowering the interest rate and restricting remedial options that are available to the receiver . . . .  Other circuits have uniformly held that debtors' actions are subject to FIRREA exhaustion . . . .  We join them by making clear that the exhaustion rule we recognized in *Henderson* [*v. Bank of New Engl.*, 986 F.2d 319, 321 (9th Cir. 1993),] is not limited to creditors, but applies as well to debtors with claims such as McCarthy's that affect the assets of a failed institution.

*Id*. at 1079-80.  The panel summarized:

> apart from claims made in connection with bankruptcy proceedings or arising out of a breach of contract fully performed by the aggrieved party but not repudiated by the receiver, all claims or actions must be submitted for administrative resolution.  Accordingly, debtors as well as creditors who assert a qualifying claim or action must exhaust.  Post-receivership claims arising out of acts by the receiver as well as by the failed institution are likewise subject to exhaustion.  As McCarthy failed to exhaust the claims made in this action, the district court properly determined that it lacked subject matter jurisdiction.  Therefore, dismissal was required.

*Id*. at 1081.

Defendants' counterclaim makes it clear that they seek the recovery of damages in excess of $10,000.  Although they argue in opposition to this motion to dismiss that they only suffer damages and their claims ripen only if the FDIC obtains a deficiency judgment in this case,[1] that is not what

---

[1] Counterclaimants' assertion that "[i]n fact, Guarantors' counterclaims are still not truly ripe for adjudication because FDIC has not been awarded a Deficiency Judgment" triggers an independent reason for dismissal of their claims for damages.  "Article III of the Constitution limits the jurisdiction of federal courts to consideration of actual cases and controversies, and federal courts are not permitted to render advisory opinions." *W. Linn Corporate Park L.L.C. v. City of W. Linn*, 534 F.3d 1091, 1099 (9th Cir. 2008).  "Ripeness is more than a mere procedural question; it is determinative of jurisdiction.  If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Id*. (quoting *Southern Pac. Transp. Co. v. City of Los Angeles,* 922 F.2d 498, 502 (9th Cir. 1990)).  "The 'central concern [of the ripeness inquiry] is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Richardson v. City & Cnty. of Honolulu*, 124 F.3d 1150, 1160 (9th Cir. 1997) (quoting 13A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3532 at 112 (2d ed. 1984)).

their counterclaim alleges. *See* Doc. 29 at ¶ 126 ("Defendants/Counterclaimants *have suffered damages in an amount in excess of Ten Thousand Dollars*") (emphasis added); ¶¶ 184, 216 ("Red Hot Corner *has been damaged* for an amount in excess of Ten Thousand Dollars") (emphasis added). Payment of these alleged damages, even if awarded by way of an offset or mitigation against a deficiency judgment would diminish the bank's assets. *McCarthy*, 348 F.3d at 1079–80. And a judgment that specifically enforces the deed-in-lieu-of-foreclosure settlement agreement would also diminish the bank's assets. Defendants themselves characterize the agreement as one in "full settlement of the balance owed by Red Hot Corner as the Borrower on a prior loan with [the bank] and for [the bank's] agreement not to exercise its rights and remedies as a beneficiary and secured creditor." Doc. 97 at 14. This would essentially release Defendants from further obligation for "the outstanding balance of the Loan," Doc. 29 at p. 37, thus "restricting remedial options that are available to the receiver." *McCarthy*, 348 F.3d at 1081. These claims were subject to FIRREA's exhaustion requirement. As Defendants/ Counterclaimants failed to exhaust them, this Court lacks subject matter jurisdiction over these counterclaims and they must be dismissed. *Id.*; *see also FDIC v. Scott*, 125 F.3d 254, 259-60 (5th Cir. 1997) (distinguishing *Titan Financial* and rejecting argument that exhaustion did not apply because the basis for indemnity counterclaim "did not originate until after [defendant] was sued by the FDIC"; "FIRREA denies jurisdiction to federal courts over 'any claim relating to any act or omission' of the receivership" and the counterclaim arose from an "act" of the receivership—"its lawsuit against him.").[2]

**4.     *Dismissal Does Not Impact Defendants' Affirmative Defenses*.**

Should any one of these counterclaims be more properly construed as an affirmative defense,

---

Counterclaimants acknowledge that "actual damages is a necessary element under Nevada law for the counterclaims asserted" yet argue that until the FDIC obtains a deficiency judgment, Counterclaimants "do not have any claims against FDIC because they were not damaged." Doc. 126 at 5 & n.8. The prematurity of these claims is an independent basis for their dismissal.

[2] As the Court disposes of the counterclaims on FIRREA-exhaustion grounds, it does not address Plaintiff's other arguments for dismissal. The Court also declines to stay these counterclaims pending completion of the administrative process because FIRREA is a jurisdictional bar and Defendants' failure to exhaust deprives this Court of subject-matter jurisdiction over these claims, necessitating dismissal. *See* Fed. R. Civ. Proc. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

however, it survives this dismissal.  In *Midwest Federal*, the Ninth Circuit denied a motion to dismiss for lack of FIRREA exhaustion upon finding that the defendant's counterclaim for reformation was more appropriately considered as the affirmative defense of mutual mistake. *Midwest Fed. Sav. Bank*, 4 F.3d at 1495-96.  Affirmative defenses are not subject to FIRREA's exhaustion requirement.  *Id*. at 1497; *Schettler v. RalRon Cap. Corp.*, 275 P.3d 933, 940 (Nev. 2012) ("FIRREA's jurisdictional bar applies to claims and counterclaims, it does not apply to defenses or affirmative defenses.").  Thus, to the extent that these "counterclaims" are instead true affirmative defenses designed only to defend against or reduce the FDIC's recovery, this Court retains jurisdiction over them as affirmative defenses but not as counterclaims.

**B.   Leave to Amend Would Be Futile Because Defendants' Failure to Exhaust the FDIC-Review Process for the New Claims Precludes this Court from Exercising Subject-Matter Jurisdiction Over Them.**

The jurisdictional defect that requires dismissal of the existing counterclaims also dictates the denial of Defendants' motion for leave to assert additional counterclaims.  Defendants claim that the amendment is necessitated because, through discovery, they "have discovered evidence supporting new Counterclaims" and "now must amend their Answer and Counterclaims to conform with the evidence discovered."  Doc. 96.  Defendants offer no explanation of the new claims or allegations, but their proposed amended complaint consists of an additional 144 paragraphs and four new claims for breach of contract and breach of the implied covenant of good faith—all allegedly based on deeds of trust.  *See* Doc. 96-1.  In each of these new claims against the FDIC (all of which arise from the same conduct that forms the basis for the existing counterclaims), Defendants allege that they have "suffered damages in an amount in excess of Ten Thousand Dollars."  *Id*. at ¶¶ 250, 289, 322, 360. Like Defendants' now-dismissed counterclaims, these claims are subject to FIRREA exhaustion and Defendants' failure to first pursue them administratively prevents this Court from exercising jurisdiction over these claims.  Accordingly, allowing amendment to add them would be futile.  *See e.g. Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).  The motion for leave to amend is therefore denied.

. . .

**Order**

Accordingly, and for the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Motion to Dismiss Counterclaims **[#95] is GRANTED** and Defendants/Counterclaimants' Counterclaims [#29] are hereby dismissed without prejudice;

IT IS FURTHER ORDERED that Defendants/Counterclaimants' Motion for Leave to Amend Answer and Counterclaims **[#96] is DENIED**.

DATED: December 3, 2013.

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE